OPINION
{¶ 1} Ambassador Homes ("Ambassador"), a division of Homewood Homes, Inc., built a home for appellees, Amanda and Bryan Helwig, and the closing was March 11, 2005. During the building process, there were several problems with the construction that were not resolved to Bryan's satisfaction. The major issues included the Tyvek house wrap and the window installation. Bryan did not believe either was properly installed. In order to address his concerns, during the construction process Bryan scheduled a meeting with a Tyvek representative and an Ambassador *Page 2 
representative, but prior to the meeting, the exterior siding and brick was installed covering the Tyvek. Bryan voiced his concerns and was assured that the Tyvek installation was correct.
 {¶ 2} Bryan was also concerned that the windows were not installed according to the manufacturer's recommendations, which required using flashing tape, and thus the manufacturer's warranty would be void. In an effort to address these concerns, immediately before closing, the Helwigs were provided a letter, dated March 4, 2005, which provided, as follows:
 Per your request, please accept this letter as assurance that the Tyvek House Wrap installation on your home was performed using Tyvek's documented installation procedures[.]
 * * *
 In addition, this letter offers assurance that the windows in your home were installed in a manner consistent with Silverline specifications and industry standards using flash tape.
(Joint Exhibit 1.) On Saturday, April 1, 2006, Bryan placed a sign in his front yard which read: "Do not build with Ambassador or Trinity! Look at my driveway and sidewalk then stop by and ask me why." (Tr. 64.) Initially, there was some confusion as to who had actually built the home because, although Ambassador had built the home, Trinity Builders Homes ("Trinity") is also a division of Homewood Homes. The first deposit checks the Helwigs wrote were to Trinity, and some employees of Trinity did work for Ambassador at times, and many of the forms had Trinity listed. Additionally, the CEO of Trinity was acting manager of Ambassador during the time that the Helwigs were building their home. Thus, the Helwigs had some confusion as to who was the actual *Page 3 
builder of their home and whether there was a distinction between Trinity and Ambassador.
 {¶ 3} On Monday, April 3, 2006, Bryan and Amanda were each sent a letter from an attorney representing both Ambassador and Trinity informing them that they were violating the deed restrictions by placing the sign in their yard. Bryan removed the sign and placed it in his garage. On April 24, he put the sign on the back of his truck, which was parked in the street in front of the house, for approximately 30 minutes, but then removed it and placed it next to the trash at the end of his driveway, because his trash can was too full to put it inside. Since he placed it on the ground face up, Homewood argued that the Helwigs continued to violate the deed restrictions. After approximately two hours, he turned the sign over.
 {¶ 4} Plaintiff-appellant, Homewood Homes, Inc. ("Homewood"), dba Ambassador Homes ("Ambassador"), and Trinity Home Builders, LLC, dba Trinity Homes, filed a complaint against appellees, Amanda and Bryan Helwig, alleging they violated the deed restrictions related to their house and tortiously interfered with Homewood's business relations by erecting a sign in their yard.[1] Homewood sought a temporary restraining order, which was granted and the parties agreed to a preliminary injunction containing the same prohibitions as the temporary restraining order.
 {¶ 5} The Helwigs filed an answer and a counterclaim, alleging breach of contract and misrepresentation. After a jury trial, the jury returned a verdict awarding the Helwigs damages on their contract and misrepresentation claims, and awarding attorney fees and punitive damages. The jury interrogatories indicated that the jury found that the Helwigs had been directly and proximately damaged as a result of *Page 4 
Homewood breaching its warranties in the amount of $200; that the Helwigs were directly and proximately damaged as a result of misrepresentations by Homewood regarding the installation of the Tyvek in the amount of $3,750; that the Helwigs were directly and proximately damaged as a result of misrepresentations of Homewood regarding the installation of the windows in the amount of $3,750. The jury found that Homewood acted with malice, egregious fraud, oppression or insult in making representations to the Helwigs about the installation of the Tyvek and the windows. The jury further found, by a preponderance of the evidence, that Homewood made a false representation of fact that was made with knowledge of its falsity or with utter disregard and recklessness about its falsity. The jury found that it may be concluded that the representation was material to the transaction and was made with the intent of misleading the Helwigs into relying on it and, thus, the Helwigs were justified in relying on it. It further found that the Helwigs were injured and that the injury was directly and proximately caused by their reliance on this representation. The jury found the Helwigs were entitled to their attorney fees and awarded $32,000 in punitive damages. The jury awarded $7,700 in damages for the warranty and misrepresentation claims. The jury also found that Homewood was entitled to recover the costs of enforcing the deed restrictions, including reasonable attorney fees through April 3, 2006.
 {¶ 6} Homewood filed a motion for judgment notwithstanding the verdict, which was denied. The trial court granted Homewood's motion for remittitur. Homewood filed a notice of appeal and raised the following assignments of error:
 I. The trial court erred in failing to grant Ambassador's Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict on the Helwigs' claim of misrepresentation. Ambassador is entitled to prevail on the misrepresentation claim because the Helwigs failed to *Page 5 
present any evidence of tort-based duties and damages beyond those provided by the contract.
 II. The trial court erred in permitting Gerald Barker to testify as a construction expert under Evid. R. 702 as he does not have the requisite skill set or knowledge of the applicable standards of care.
 III. The trial court erred in permitting the jury to determine Ambassador's cost of enforcement of the deed restrictions.
 IV. The trial court erred in permitting the jury to consider and award damages, pertaining to the Tyvek, which were greater than the $1,100.00 provided by the Contract.
 {¶ 7} The Helwigs filed a notice of cross-appeal, raising the following cross-assignments of error:
 1. The trial court erred by limiting appellees claims and evidence to only those defects set forth in the counterclaim.
 2. The trial court erred by dismissing appellees' counterclaims against Trinity.
 3. The trial court erred by dismissing appellees' abuse of process claims.
 4. The trial court erred by failing to award sanctions pursuant to R.C. 2323.51 for appellant's frivolous conduct.
 {¶ 8} Homewood filed a motion to strike the cross-appeal, arguing that it was untimely and that it did not state that it was conditioned on granting relief to appellant. Appellees filed a motion to amend the notice of cross-appeal to reflect that the cross-appeal is conditioned upon granting relief to appellant. This court granted the motion to amend on October 17, 2008; thus, the motion to strike the cross-appeal is rendered moot.
 {¶ 9} By the first assignment of error, Homewood contends that the trial court erred in failing to grant Homewood's motion for directed verdict and motion for judgment notwithstanding the verdict on the Helwigs' claim of misrepresentation. Homewood *Page 6 
argues that it is entitled to prevail on the misrepresentation claim because the Helwigs failed to present any evidence of tort-based duties and damages beyond those provided by the contract.
 {¶ 10} Homewood made a motion for directed verdict and filed a motion for judgment notwithstanding the verdict based upon the punitive damages award, arguing that the punitive damages were based upon breach of contract, not an independent tort or damages stemming from that independent tort. Thus, Homewood contended the punitive damages award was inappropriate, and the attorney fees that were connected to the punitive damages award was also inappropriate.
 {¶ 11} Civ. R. 50(A)(4) governs the standard for directed verdicts and provides that:
 When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 {¶ 12} In ruling on a motion for a directed verdict, a trial court is required to construe the evidence most strongly in favor of the nonmovant. Civ. R. 50(A)(4); Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284. The motion must be denied where there is substantial evidence to support the nonmoving party's case and reasonable minds may reach different conclusions. Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271, 275. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon the motion. Id. A motion for directed verdict tests whether the evidence presented is legally sufficient to take the case to the jury. Wagner v.Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 294. *Page 7 
"The standard for granting a motion for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Civ. R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ. R. 50(A)." Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 679.
 {¶ 13} Homewood's argument is based upon Joint Exhibit 1, which is the letter from the managers of Ambassador to the Helwigs assuring them that the Tyvek House Wrap and the windows were installed using the manufacturer's installation procedures and according to industry standards and the warranties applied. Homewood argues that the Helwigs did not prove a tort duty independent from the contract, and a party cannot recover through tort law for losses resulting from a breach of contract. "`[T]he existence of a contract action * * * excludes the opportunity to present the same case as a tort claim.'" Textron Fin.Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 151, quoting Wolfe v. Continental Cas. Co. (C.A.6, 1981), 647 F.2d 705, 710, discretionary appeal not allowed (1996), 78 Ohio St.3d 1425. "A breach of contract claim does not create a tort claim, and a tort claim based upon the same actions as those upon which a breach of contract claim is based exists only if the breaching party also breaches a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed." Prater v. Three-C Body Shop, Inc., Franklin App. No. 01AP-950, 2002-Ohio-1458, citing Textron, at 151. The evidence must show damages attributable to the wrongful acts which are in addition to the damages attributable to the breach of contract. Id.
 {¶ 14} In this case, Homewood and the Helwigs were already contractually obligated to build/buy the home. While Homewood may have misrepresented to the Helwigs how the Tyvek and windows were installed, the letter did not change the *Page 8 
contractual duties. The parties were still obligated by the original contract. The trial court ruled that the letter constituted a contract. (Tr. 694.) The court then decided that the jury could determine whether Homewood made a material misrepresentation or committed a breach of contract/warranty, and if a material misrepresentation, the Helwigs could then recover punitive damages, but not damages for both. (Tr. 698.)
 {¶ 15} Homewood did not breach a duty separate from the original contract, and even in closing argument, the Helwig's counsel admitted the letter was a contract (Tr. 761) and admitted they asked for "basically the same damages but two different ways to get there." (Tr. 764.) The Helwigs proved no duty or damages other than those stemming from the breach of the original contract. The trial court erred in not granting Homewood's motion for directed verdict on the claim of misrepresentation. Given that the trial court should have granted Homewood's motion for directed verdict, the award of attorney fees and punitive damages based upon the jury's finding of misrepresentation also fail. Homewood's first assignment of error is well-taken.
 {¶ 16} By Homewood's second assignment of error, it contends that the trial court erred in permitting Gerald Barker to testify as a construction expert under Evid. R. 702 as he does not have the requisite skill set or knowledge of the applicable standards of care. The admission of expert testimony is governed by Evid. R. 702, which provides, as follows:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; *Page 9 
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
 {¶ 17} Homewood argues that Barker was not qualified to testify as an expert because he did not know the industry standards for builders in central Ohio; however, he was not testifying regarding the industry standards but, rather, the manufacturer's directions. Barker testified regarding his personal observations of the house and the installation procedures in regards to the manufacturer's directions.
 {¶ 18} Homewood also argues that Barker lacked the qualifications of an expert. However, he has worked part-time since 1977 and full-time since 1996 in the home construction business. He testified he has remodeled bathrooms, kitchens, basements, and has put on additions. He has installed new windows and worked with flashing tape and caulking. He has installed Tyvek House wrap. Generally, an expert witness is not required to be the best witness on the subject. Alexander v. Mt. CarmelMed. Ctr. (1978), 56 Ohio St.2d 155, 159. The test is whether the expert testimony will aid the trier of fact in its search for the truth. Id. The determination of whether a witness possesses the qualifications necessary to allow his expert testimony lies within the sound discretion of the trial court, and such determinations will not be reversed by an appellate court without a showing of an abuse of discretion. Ayers v.DeBucci (2000), *Page 10 137 Ohio App.3d 145, 148. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Homewood's objections go to the weight, rather than the admissibility of the testimony. Homewood's second assignment of error is not well-taken.
 {¶ 19} By their third assignment of error, Homewood contends that the trial court erred in permitting the jury to determine Ambassador's cost of enforcement of the deed restrictions. Homewood took several steps to enforce the deed restrictions in this case. Initially, the attorney sent the Helwigs a letter, then a temporary restraining order was obtained, and thereafter the parties entered into an agreed preliminary injunction. Homewood sought the cost of enforcement, including reasonable attorney fees. The trial court permitted the jury to determine the date that Homewood was entitled to recover its costs of enforcement, and the jury determined it was through April 3, 2006 or the costs to recover for the cease and desist letter. Homewood argues that permitting the jury to determine the scope of damages violated principles of equity. Not only did Homewood not object to the jury determining the date, the parties agreed the jury would determine whether Homewood was entitled to costs as a result of the breach of deed restrictions but the court would determine how much, if any, of those costs Homewood would recover. (Tr. 49.)
 {¶ 20} It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived. State v. Burge (1993), 88 Ohio App.3d 91, 93, citingState v. Comen (1990), 50 Ohio St.3d 206, 211. Homewood's third assignment of error is not well-taken. *Page 11 
 {¶ 21} By its fourth assignment of error, Homewood contends that the trial court erred in permitting the jury to consider and award damages, pertaining to installation of the Tyvek, which were greater than the $1,100 provided by the contract. Homewood argues that remittitur is required to reduce the damages to $1,100, the amount that the Helwigs paid for the Tyvek option because of the contract language provided in the letter to the Helwigs from the Ambassador managers on March 4, 2005 (Joint Exhibit 1), which provides, as follows:
 In the event that a third-party arbitrator, agreeable to both parties, finds that the installation does not conform to the above standards, Ambassador Homes and/or the responsible party will refund the one thousand one hundred dollars ($1,100) paid for the purchase and installation of this product.
 {¶ 22} This provision is contingent upon the finding of a third-party arbitrator; however, rather than submitting the issues to arbitration, Homewood commenced this lawsuit. Waiver can be either express or inferred when the party seeking arbitration acts inconsistently with its right to proceed with arbitration. See Standard Roofing Co. v. John G.Johnson Sons Constr. Co. (1977), 54 Ohio App.2d 153. Clearly, filing and proceeding with a lawsuit rather than seeking arbitration is a waiver of arbitration, and since there was no finding of an arbitrator on which to base the damages, the contract provision does not apply to limit the damages. Homewood's fourth assignment of error is not well-taken.
 {¶ 23} The Helwigs have raised cross-assignments of error which are contingent upon this court granting Homewood relief. By the first cross-assignment of error, the Helwigs contend that the trial court erred by limiting their claims and evidence to only those defects set forth in the counterclaim. On the eve of trial, on January 4, 2008, Homewood filed three motions, one to exclude the Helwigs' expert, one to exclude any *Page 12 
testimony as to any allegations beyond those listed in the Helwigs' amended counterclaim, and a motion to strike the jury demand. The trial started on January 7, 2008 and was transferred to a visiting judge. The motions were ruled on before the case was transferred to the visiting judge. Thus, the Helwigs were not given a chance to respond to the motions.
 {¶ 24} The Helwigs now contend that the trial court erred in limiting their claims of defects with their newly built home to the defects that were listed in their counterclaim. Although Bryan had testified regarding many defects in his deposition almost a year before the trial and filed with the motion for summary judgment, the Helwigs did not include an exhaustive list in the counterclaim and did not amend the counterclaim. On the first day of trial, the Helwigs requested leave to amend the counterclaim, which was denied. The Helwigs argue that Homewood was aware of the full extent of the issues regarding the construction of the home and had a fair opportunity to defend against the allegations; thus, there was no basis to limit the evidence or deny the amendment of the counterclaim. However, Homewood counters with the contention that it did not have notice of the other claims, and any testimony regarding such would be irrelevant.
 {¶ 25} Even though Homewood filed the motions in an untimely manner and the Helwigs did not have an opportunity to respond, in this case, the error was not prejudicial because, even with a response, the trial court would not have abused its discretion in limiting the testimony to the claims in the counterclaim. The Helwigs had a duty to amend the counterclaim before the beginning of the trial to put Homewood on notice of their claims in order to prepare for trial.
 {¶ 26} The Helwigs also contend that the trial court erred in denying their oral motion to amend their counterclaim on the first day of the trial. Civ. R. 15(A) provides *Page 13 
that a party may amend its pleading by leave of court and that such leave "shall be freely given when justice so requires." Turner v. Cent.Loc. School Dist. (1999), 85 Ohio St.3d 95, 99. If there is a showing of bad faith, undue delay or undue prejudice to the opposing party, the amendment should not be allowed. Id. The trial court needs to consider whether there is actual prejudice to the opposing party because of the delay. Schweizer v. Riverside Methodist Hosp. (1996),108 Ohio App.3d 539. Absent an abuse of discretion, a trial court's decision whether to grant or deny a motion to amend a pleading will not be reversed on appeal. State ex rel. Askew v. Goldhart (1996), 75 Ohio St.3d 608, 610. As stated above, an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, supra.
 {¶ 27} Although the Helwigs claim that Homewood was aware that there were other problems with the construction of the house because Bryan testified to them in his deposition and affidavit, and that the parties understood the extent of the problems from discovery, the trial court did not abuse its discretion when the Helwigs did not move to amend their counterclaim until the first day of trial. In American ContractorsIndemn. Co. v. Nicole Gas Prod. Ltd., 10th Dist. No. 07AP-1039,2008-Ohio-5056, this court found that the trial court did not abuse its discretion in denying leave to amend an answer and assert a counterclaim less then two weeks prior to trial. The Helwigs' first cross-assignment of error is not well-taken.
 {¶ 28} By their second cross-assignment of error, the Helwigs contend that the trial court erred by dismissing the Helwigs' counterclaims against Trinity. Although there was much confusion as to whether Trinity was involved in this case, as there were Trinity employees working for Ambassador during the building of this home, the *Page 14 
contracts involved are with Homewood and Ambassador, not Trinity. Thus, the trial court properly dismissed Trinity as a party, and the second cross-assignment of error is not well-taken.
 {¶ 29} By their third cross-assignment of error, the Helwigs contend that the trial court erred by dismissing their abuse of process claims. The elements of an abuse of process claim are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994),68 Ohio St.3d 294, 298. In Robb v. Chagrin Lagoons Yacht Club, Inc. (1996),75 Ohio St.3d 264, 271, the Supreme Court of Ohio stated that abuse of process is an action initiated for improper purposes and the "`[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.'" Id., quoting Prosser Keeton on Torts (5 Ed. 1984) 898, Section 121. "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." Robb, supra, at 271.
 {¶ 30} In this case, the Helwigs argue that although Homewood filed the legal proceeding regarding the deed restriction violation properly because there was indeed a violation, Homewood had an ulterior motive which was to prevent the Helwigs from using their free speech rights and criticizing Homewood's building process. In the initial letter from Homewood's attorney informing the Helwigs to remove the sign from their yard, it stated: "My clients * * * will not allow their business relations to be improperly *Page 15 
interfered with through the posting of signs or other violations of the Deed Restrictions." (Joint Exhibit 1.) Once the sign was removed from the yard, Homewood sought a preliminary injunction, permanent injunction, and claimed interference with business relations and defamation. The CEO and president of Homewood testified that the deed restriction is used to "control the signage that might be put up in a community that would reflect negatively on the developer." (Tr. 107.)
 {¶ 31} The trial court found that Homewood had a legitimate purpose in filing the deed restriction action in preventing any more signs and more violations of the deed restrictions. (Tr. 686.) The trial court also found a legitimate purpose in the defamation claim in that Homewood was seeking damages, not necessarily attempting to silence the Helwigs. (Tr. 687-88.) While the Helwigs assert that Homewood may have had more than one purpose in filing the actions, there was no evidence that the action was perverted to attempt to accomplish an ulterior purpose for which it was not designed. Thus, we agree with the trial court's finding, and the third cross-assignment of error is not well-taken.
 {¶ 32} By the last cross-assignment of error, the Helwigs contend that the trial court erred by failing to award sanctions pursuant to R.C. 2323.51 for Homewood's frivolous conduct by amending the complaint to add a claim for defamation which was without factual support. R.C. 2323.51(A)(2)(a) defines frivolous conduct as:
 Conduct of an inmate or other party to a civil action, * * * or other party's counsel of record that satisfies any of the following:
 i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation. *Page 16 
 (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
 (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
 (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.
 {¶ 33} The Helwigs argue that since the defamation claim was ultimately dismissed, they should have been awarded attorney fees because Homewood did not have a good-faith basis to pursue its defamation claim. While there was no evidence that Amanda made any statements to existing or potential customers, Bryan testified that he did talk to several people explaining that he believed the builders were dishonest and lacked integrity. (Tr. 460-61; 472.) While there was not enough evidence to survive a motion for summary judgment this does not necessarily translate into a frivolous claim as Homewood had a basis to file the claim. The Helwigs' fourth cross-assignment of error is not well-taken.
 {¶ 34} For the foregoing reasons, Homewood's motion to strike cross-appeal is moot. Homewood's first assignment of error is sustained, its second, third, and fourth assignments of error are overruled, and the Helwigs' four cross-assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Motion to strike cross-appeal moot; judgment reversed and causeremanded.
BRYANT, J., concurs. SADLER, J., concurs separately.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Trinity was dismissed as a party by the trial court. (Tr. 716.) *Page 17