OPINION
{¶ 1} Appellant, Richard B. Parry ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, in which that court found that appellant had *Page 2 
engaged in frivolous conduct in his capacity as counsel for plaintiffs in the captioned litigation, imposed sanctions upon appellant therefor, and ordered him to pay a portion of the attorney fees that defendant-appellee, American Electric Power ("AEP"), incurred in the litigation.
 {¶ 2} This case began in April 2003, when the plaintiffs in the captioned case filed a complaint against AEP and defendant, Richard M. Frost ("Frost"), who is not a party to this appeal. In the complaint, the plaintiffs alleged that plaintiff, Boyd McCallister ("Mr. McCallister"), suffered injuries in July 2001, when an electrical transformer located on Frost's property fell from a pole. The plaintiffs claimed that AEP negligently failed to prevent Mr. McCallister's injuries either by failing to properly maintain the transformer or by failing to warn Mr. McCallister of the transformer's hazardous condition.
 {¶ 3} The plaintiffs' only contention supporting their failure-to-warn claim against AEP was that AEP knew or should have known that the transformer was a hazardous condition because, on September 25, 2000, roughly 10 months prior to Mr. McCallister's injury, an AEP employee responded to the scene after AEP received a call about the transformer sparking. The AEP employee indicated that he could not do anything about the sparking because AEP did not own or maintain the transformer and the pole was located on private property. Also on that date, the Worthington Fire Department was called to the scene because of the sparking, but the Fire Department concluded that the transformer was not hazardous.
 {¶ 4} The parties engaged in several months of discovery, after which AEP filed a motion for summary judgment. While that motion was pending, the plaintiffs voluntarily dismissed the case (referred to hereinafter as "McCallister I") as to all parties on February *Page 3 
18, 2004. On August 25, 2004, the plaintiffs refiled the case (hereinafter referred to as "McCallister II"). The new complaint contained the same substantive allegations against Frost and AEP as had the complaint in McCallister I. The parties again engaged in discovery, including the deposition of the plaintiffs' expert witness, Joseph Nimon ("Nimon"). Other than Nimon's testimony, which did not pertain to AEP's alleged duty to maintain or warn, the evidence that the plaintiffs adduced in McCallister II was the same as that which they had adduced inMcCallister I.
 {¶ 5} On May 31, 2005, AEP again filed a motion for summary judgment, offering evidence that AEP did not own the transformer or the property upon which it was located, and that, when the Worthington Fire Department was called to the scene in September 2000, fire department personnel determined that the transformer presented no hazard. In their response, the plaintiffs presented the testimony of witnesses who had seen the transformer sparking on September 25, 2000, but presented no evidence to counter AEP's evidence that it did not own or maintain the transformer, was not aware of any hazard, and did not own the land upon which the pole was located. Plaintiffs presented no evidence that the sparking or any other condition rendered the transformer hazardous. In fact, Nimon agreed that he could not dispute the Worthington Fire Department's finding that no hazardous condition existed on September 25, 2000.
 {¶ 6} On August 9, 2005, the trial court granted AEP's motion for summary judgment, finding that AEP owed no duty to Mr. McCallister because there was no evidence that AEP was on notice of any hazardous condition or that AEP owned the transformer or the property upon which it was located. Later, on August 15, 2005, the trial court journalized a nunc pro tunc entry of summary judgment in AEP's favor. *Page 4 
 {¶ 7} On September 14, 2005, AEP filed its motion for sanctions and attorney fees, pursuant to R.C. 2323.51, seeking sanctions against both of the plaintiffs and all of their attorneys. The record reflects that the plaintiffs' attorneys of record in McCallister II were Bradford B. Woelfel ("Woelfel"), John T. Ryerson ("Ryerson"), Randal Reves ("Reves"), and appellant. The certificate of service on the motion for sanctions indicates that AEP served separate copies of the motion upon Woelfel, Ryerson, Reves, and appellant.
 {¶ 8} On September 28, 2005, the plaintiffs filed a "motion to dismiss" AEP's motion for sanctions. This motion to dismiss was signed by Ryerson as "Co-Counsel for the Plaintiffs." On October 11, 2005, AEP filed a memorandum in reply to the plaintiffs' "motion to dismiss," and, again, AEP served a separate copy thereof on Woelfel, Ryerson, Reves, and appellant. Also on October 11, 2005, AEP filed a motion for sanctions against Woelfel, Ryerson, Reves, and appellant, pursuant to Civ. R. 11, and served separate copies of this motion upon each attorney.
 {¶ 9} Meanwhile, on September 16, 2005, the plaintiffs appealed the summary judgment, and, following briefing and oral argument, a unanimous panel of this court affirmed the judgment. We determined:
 [I]t is undisputed that AEP did not own the transformer or any other equipment that allegedly caused Mr. McCallister's injuries. All of this equipment was "customer-owned." Therefore, AEP owed no duty to inspect or repair this equipment and it cannot be liable in negligence for its failure to do so. Appellants have not cited any authority in conflict with this principle. None of the cases cited by appellants impose a duty on an electric utility to inspect or repair a customer's equipment. *Page 5 
 Appellants also argue that even if AEP owed no duty to inspect or repair its customer's equipment, it had a duty to warn of a hazardous condition. We agree with appellants that there is some support in the case law for the existence of a duty to warn of a hazardous condition. Here, however, there is no evidence that AEP was aware of a hazardous condition on September 25, 2000 or on any other day prior to the date of the explosion. Indeed, the only evidence in the record of the condition of the transformer and related equipment indicates that the condition was not hazardous.
(Citations omitted. Emphasis sic.) McCallister v. Frost,166 Ohio App.3d 66, 2006-Ohio-1479, 849 N.E.2d 69, ¶ 10-11.
 {¶ 10} While that appeal was still pending, on December 22, 2005, the court of common pleas dismissed the plaintiffs' claims against Frost, thereby terminating the action as to all claims and all parties. Also on December 22, 2005, the trial court issued a notice that, on February 7, 2006, the court would hold a hearing on the motions for sanctions. The notice indicates that it was sent to Woelfel and Ryerson.
 {¶ 11} On February 1, 2006, Thomas F. Martello, Jr., entered his appearance on behalf of "Plaintiffs Boyd and Roberta McCallister for the limited purpose of defending them, only, against [AEP's] Motion for Fees and Costs * * *." Also on February 1, 2006, Barry A. Waller entered his appearance as counsel for Woelfel and Reves, and filed a motion, on behalf of those two attorneys, to continue the sanctions hearing until after resolution of the appeal in McCallister II. The court agreed to do so.
 {¶ 12} Following the March 28, 2006 conclusion of the appellate proceedings, the trial court issued a notice that, on March 27, 2007, it would hold an evidentiary hearing on AEP's frivolous conduct and Civ. R. 11 motions for sanctions. The notice indicates that the trial court sent copies of it to AEP's counsel; Woelfel, as "counsel for plaintiffs"; and *Page 6 
Attorney Waller as "counsel for Bradford B. Woelfel." On March 6, 2007, Attorney Waller filed a motion for leave to withdraw as counsel for Reves, and the trial court granted the motion. On March 27, 2007, Dianna M. Anelli entered her appearance on behalf of Reves and Ryerson.
 {¶ 13} Beginning March 27, 2007, the trial court held a two-day hearing on AEP's motions for sanctions and attorney fees. Appellant did not attend the first day of the hearing, but did attend on the second day of the hearing. He objected to the hearing on the grounds that he had not received the required notice of it. He testified on his own behalf. After submission of additional evidentiary materials and proposed findings of fact and conclusions of law, the trial court, by decision and entry journalized September 26, 2007, found that appellant, Woelfel, Ryerson, and Reves had engaged in frivolous conduct in connection with McCallister II and the appeal that followed, and awarded AEP attorney fees and costs in the amount of $77,338.03. The trial court ordered that each of the four attorneys being sanctioned be responsible for payment of a portion of that amount equal to the percentage of fees he would have received under a fee-sharing agreement that the four had executed in connection with their representation of the plaintiffs.
 {¶ 14} Appellant timely appealed and advances three assignments of error for our review, as follows:
 FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN HOLDING A SANCTIONS HEARING WITHOU[T] GIVING NOTICE TO COUNSEL IN VIOLATION OF R.C. 2323.51 AND THE DUE PROCESS CLAUSES OF THE OHIO AND FEDERAL CONSTITUTIONS. *Page 7 
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTINING [SIC] ATTORNEY FEES WHEN THE MOTIONS [SIC] FOR SANCTIONS WAS UNTIMELY FILED UNDER R.C. 2323.51.
 THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING THE MOTION BECAUSE THERE WAS A GOOD FAITH BASIS FOR THE ACTION.
 {¶ 15} This case concerns sanctions imposed pursuant to R.C. 2323.51, which provides, in pertinent part:
 (B)(1) Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15
or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.
 (2) An award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action or an appeal of the type described in that division or on the court's own initiative, but only after the court does all of the following:
 (a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award;
 (b) Gives notice of the date of the hearing described in division (B)(2)(a) of this section to each party or counsel of record who allegedly engaged in frivolous conduct and to *Page 8 
each party who allegedly was adversely affected by frivolous conduct;
 (c) Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division, allows the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made. * * *
 (3) The amount of an award made pursuant to division (B)(1) of this section that represents reasonable attorney's fees shall not exceed, and may be equal to or less than, whichever of the following is applicable:
 (a) If the party is being represented on a contingent fee basis, an amount that corresponds to reasonable fees that would have been charged for legal services had the party been represented on an hourly fee basis or another basis other than a contingent fee basis;
 (b) In all situations other than that described in division (B)(3)(a) of this section, the attorney's fees that were reasonably incurred by a party.
 (4) An award made pursuant to division (B)(1) of this section may be made against a party, the party's counsel of record, or both.
 {¶ 16} In support of his first assignment of error, appellant argues that the trial court could not lawfully impose sanctions upon him under R.C. 2323.51 because it failed to notify him of the date of hearing, in writing; he also argues that, without written notice of the hearing addressed to him personally, the trial court deprived him of due process. Appellant directs our attention to the case of Ramson'sImports, Inc. v. Chheda (Jan. 10, 1984), Franklin App. No. 83AP-566, 1984 Ohio App. LEXIS 8749, in which this court stated, "[n]otice of the date set for hearing on a motion is fundamental. When such *Page 9 
hearing is to be oral before the court, the non-movant must know on what date and at what time to appear to argue his case." Id. at *4.
 {¶ 17} Pursuant to R.C. 2323.51(B)(2)(b), the trial court was required to "give[ ] notice of the date of the hearing * * * to each * * *counsel of record who allegedly engaged in frivolous conduct." (Emphasis added.) Additionally, at a minimum, due process of law requires notice and opportunity for a hearing, that is, an opportunity to be heard.Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. AEP argues that the trial court complied with R.C. 2323.51(B)(2)(b), and appellant had notice of the hearing, by virtue of publication of the date and time of the hearing in the Daily Reporter newspaper. AEP directs our attention to Loc. R. 17 of the Franklin County Court of Common Pleas, which provides, in pertinent part:
 17.01. The Case Schedule and publication in the Daily Reporter shall be deemed official and complete notification to all counsel of any assignment of any case for any purpose whatever. It shall be the duty of counsel to ascertain from the Case Schedule and the Daily Reporter any official notification pertaining to any case.
 17.02. Where mail notification is provided for by these rules, or is otherwise given, non-delivery of mail notification shall not excuse the non-appearance of counsel where notice has also been given by publication in the Case Schedule or the Daily Reporter as provided by Loc. R. 17.01.
 {¶ 18} Courts have the authority to promulgate local rules.Cassidy v. Glossip (1967), 12 Ohio St.2d 17, 21, 41 O.O.2d 153,231 N.E.2d 64. Such rules are enforceable so long as they are not inconsistent with the express requirements of a statute. State exrel. MADD v. Gosser (1985), 20 Ohio St.3d 30, 20 OBR 279,485 N.E.2d 706, at paragraph three of the syllabus. Relevant here, R.C. 2323.51
expressly requires that the *Page 10 
court provide notice of the hearing to each attorney of record against whom sanctions are being sought. By its terms, Franklin County Court of Common Pleas Loc. R. 17 applies to attorneys, such as appellant, and is not inconsistent with R.C. 2323.51's requirement of notice to attorneys of record, such as appellant; the rule merely provides for the manner in which the court will give each attorney of record the notice that the statute requires. The local rule does not alter or abridge the statutory requirement because the statute does not require any particular form of notice, nor does the rule deprive attorneys of due process of law. SeeKazushige Honda v. Mid-West Restaurant Equip., Inc. (May 22, 2001), Franklin App. No. 00AP-842.
 {¶ 19} AEP served appellant with a copy of its motion for sanctions; therefore, he was aware that AEP was seeking sanctions against him and that the matter was still pending, even though the summary judgment and appellate proceedings had concluded. Moreover, the record reveals and it is undisputed that the trial court published notice of the March 27, 2007 sanctions hearing in the Daily Reporter. Under Loc. R. 17, this constituted notice to counsel, including those who, like appellant, were facing the possibility of frivolous conduct sanctions in their capacity as counsel of record. On these facts, we conclude that appellant was afforded the notice that R.C. 2323.51 requires. For this reason, appellant's first assignment of error is without merit and is overruled.
 {¶ 20} In support of his second assignment of error, appellant argues that the trial court should have denied AEP's motion for sanctions because it was untimely filed. He points out that the trial court granted AEP's motion for summary judgment on August 9, 2005, and AEP filed its motion for sanctions on September 14, 2005, which is 36 days after the trial court dismissed the claims against AEP. Appellant argues that, under the *Page 11 
applicable version of R.C. 2323.51, AEP had only 21 days from the trial court's entry of summary judgment in its favor to file its motion for sanctions. Because it waited until 36 days after the summary judgment, appellant contends, the trial court should have overruled the motion as untimely.
 {¶ 21} Appellee argues that its motion was timely regardless which version of the statute applies. We agree. In Soler v. Evans, St. Clair Kelsey, 94 Ohio St.3d 432, 2002-Ohio-1246, 763 N.E.2d 1169, the Supreme Court of Ohio held:
 [T]he aggrieved party also has the option of waiting until the conclusion of the action to seek sanctions. Construing the word "judgment" as used in the statute to mean a final appealable order serves the remedial purpose of the statute. By enacting R.C. 2323.51, the General Assembly sought to provide a remedy for those harmed by frivolous conduct. Yet, by the same token, the General Assembly manifested its intent that there be a cutoff time for this sanction to be imposed. This purpose is served by giving the aggrieved party the option of filing the sanctions motion at any time prior to trial or within twenty-one days of the last judgment rendered in the case. This would assure that twenty-one days after the entry of final judgment, the proceedings would be over.
(Emphasis added.) Id. at 436.
 {¶ 22} Applying this holding to the instant case, appellee's motion for sanctions was timely filed because it was filed before the December 22, 2005 entry dismissing the claims against Frost, which was the "last judgment rendered in the case." Accordingly, appellant's second assignment of error is without merit and is overruled.
 {¶ 23} In his third assignment of error, appellant argues that the trial court erred in granting appellee's frivolous conduct motion and in awarding sanctions because there was a good faith basis for pursuit ofMcCallister II and the subsequent appeal. *Page 12 
 {¶ 24} A trial court is required to engage in a two-part inquiry when presented with an R.C. 2323.51 motion for sanctions. Initially, it must determine whether an action taken by the party against whom sanctions are sought constituted frivolous conduct. Second, if the conduct is found to be frivolous, the trial court must determine what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party.
 {¶ 25} In its decision awarding sanctions, the trial court found that the claims against AEP that formed the basis for McCallister II were not warranted under existing law and that the action consisted of allegations that had no evidentiary support. The trial court's factual findings will not be disturbed if they are supported by competent, credible evidence. Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52, 673 N.E.2d 628. However, "[a] determination * * * that conduct `is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law,' requires a legal analysis." Lable Co. v. Flowers (1995),104 Ohio App.3d 227, 233, 661 N.E.2d 782, quoting R.C. 2323.51(A)(2)(b). We review questions of law de novo. Goldberg v. Mittman, Franklin App. No. 07AP-304, 2007-Ohio-6599, ¶ 7, citing Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm, 73 Ohio St.3d 107, 108, 1995-Ohio-214, 652 N.E.2d 684. With respect to the second step, the trial court's award of monetary sanctions is subject to review for an abuse of discretion. Crockett v.Crockett, Franklin App. No. 02AP-482, 2003-Ohio-585, ¶ 19; Neubauer v.Ohio Remcon, Inc., Franklin App. No. 05AP-946, 2006-Ohio-1481, ¶ 29. However, in this case, appellant has not challenged the amount of the sanctions awarded against him. *Page 13 
 {¶ 26} In his brief on appeal, appellant does not challenge or dispute any of the court's factual findings. He simply argues that, following their investigation of the factual underpinnings of any potential claims, he and his co-counsel named AEP as a defendant because it supplied electricity to the transformer and that, in doing so, he and his colleagues acted in good faith, but made a "mere misjudgment or tactical error." (Brief of appellant, at 7.) He argues that R.C. 2323.51
was never intended to punish attorneys for such transgressions.
 {¶ 27} In response, AEP argues that appellant and his colleagues pursued the action against AEP, and an appeal, despite a dearth of evidence supporting the claim that AEP was negligent, and in the face of a warning from opposing counsel that the claim was without merit. We agree.
 {¶ 28} The following evidence was adduced at the sanctions hearing. The only connection that AEP ever had to the transformer was that it supplied electricity to the transformer. AEP never owned or maintained the transformer, and it did not own the land upon which the transformer was situated. Upon receipt of the complaint in McCallister I, AEP's counsel informed the plaintiffs' counsel that AEP did not own the transformer or the land. AEP's counsel asked the plaintiffs' attorneys to dismiss the lawsuit based on AEP's lack of ownership, and agreed that, if it was later discovered that AEP did owe the plaintiffs a duty, AEP would not assert any statute of limitation defense. AEP's counsel reiterated this offer in writing.
 {¶ 29} The plaintiffs' attorneys learned, during the pendency ofMcCallister I, that the Worthington Fire Department had responded to the call about the sparks, and determined that the transformer was not a hazardous condition. In fact, the plaintiffs' *Page 14 
attorneys obtained the fire department's report indicating that no hazard was found. Also during McCallister I, the plaintiffs' attorneys retained Nimon's services. Nimon executed an affidavit in which he gave his opinion as to the existence of flaws in the equipment that caused the transformer to fall from the pole and injure Mr. McCallister. However, Nimon's opinion said nothing about AEP or any duty it had with respect to the equipment. Again, there has never been any dispute that AEP was not the owner of the equipment or the land on which it was situated.
 {¶ 30} Twenty years ago, the Supreme Court of Ohio held that an electrical utility company owes no duty to inspect or repair its customer's distribution system. Otte v. Dayton Power Light Co. (1988),37 Ohio St.3d 33, 38, 523 N.E.2d 835. In so holding, the court inOtte expressly and wholly rejected the notion that an electric company will be strictly liable for the failure of its customers' equipment. In this case, the evidence demonstrated that, by the time McCallisterI was dismissed, and before McCallister II was filed, appellant and his co-counsel knew that the facts demonstrated that AEP owed no duty to the plaintiffs with respect to Mr. McCallister's injuries. Nonetheless, they refiled the case against AEP, causing AEP to incur attorney fees for discovery, including Nimon's deposition, and for preparation of another motion for summary judgment. Then, after the trial court granted AEP a summary judgment based on its lack of any duty toward the plaintiffs, appellant and his co-counsel appealed, forcing AEP to incur more attorney fees to defend the summary judgment, whereupon a panel of this court unanimously affirmed.
 {¶ 31} "Frivolous conduct" includes making "allegations or other factual contentions that [either] have no evidentiary support" or "are not warranted by the *Page 15 
evidence * * *." R.C. 2323.51(A)(2)(a)(iii) and (iv). Given the firmly established precept announced in Otte, and the absolute dearth of any evidence that AEP owned the transformer or the land upon which it was placed, appellant and his colleagues' decision to pursue claims against AEP in McCallister II was not a mere miscalculation or strategic error; it was the very definition of frivolous conduct. Accordingly, appellant's third assignment of error is overruled.
 {¶ 32} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BRYANT and KLATT, JJ., concur. *Page 1