[Cite as *Vossman v. AirNet Sys., Inc.*, 2018-Ohio-1940.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dan W. Vossman, | : | |
| Plaintiff-Appellant, | : | |
| [Russell A. Kelm et al., | : | No. 16AP-801 |
| | | (C.P.C. No. 11CV-7360) |
| Appellants], | : | |
| v. | | (REGULAR CALENDAR) |
| | : | |
| AirNet Systems, Inc. et al., | : | |
| Defendants-Appellees. | : | |
| | : | |

---

# D E C I S I O N

## Rendered on May 17, 2018

---

**On brief:** *Law Offices of Russell A. Kelm*, and *Russell A. Kelm*, for appellants. **Argued:** *Russell A. Kelm*.

**On brief:** *Elfvin, Klingshirn, Royer & Torch, LLC*, and *Neil E. Klingshirn*, for Amicus Curiae Ohio Employment Lawyers Association.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, David A. Campbell*, and *Gregory C. Schneiderer*, for appellees. **Argued:** *David A. Campbell*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Dan W. Vossman ("Vossman"), along with his attorneys, Russell A. Kelm and Joanne Detrick (collectively "appellants"), appeal the November 7, 2016 judgment entry of the Franklin County Court of Common Pleas which made final and appealable the court's: (1) February 12, 2015 decision and entry finding defendants-appellees, AirNet Systems, Inc. ("AirNet"), Thomas Schaner, and Quinn Hamon (collectively "appellees"), are entitled to recover attorney fees from appellants, pursuant to

R.C. 2323.51(A)(2)(a)(ii), for the time period April 26 through December 10, 2012, and (2) October 19, 2016 decision and entry finding the amount of attorney fees owed to be $45,714.53. For the following reasons, we reverse.

## I. Procedural History

### A. Merit Determination

{¶ 2} The facts of this case are summarized in *Vossman v. AirNet Sys., Inc.*, 10th Dist. No. 12AP-971, 2013-Ohio-4675, and will only be repeated herein as relevant to the analysis of the assignments of error. On June 15, 2011, Vossman filed suit against appellees asserting a single cause of action for age discrimination under R.C. 4112.14. On July 12, 2011, appellees filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), asserting Vossman failed to state a claim upon which relief could be granted. On September 22, 2011, the trial court denied appellees' motion to dismiss.

{¶ 3} On October 19, 2012, upon appellees' motion, the trial court entered a decision granting summary judgment in favor of appellees. The trial court reasoned that: (1) there was no evidence age discrimination was the basis for Vossman's termination, and (2) Vossman admitted he does not believe age discrimination was the cause of the allegations and investigations into his conduct. Vossman appealed. On October 22, 2013, this court affirmed the trial court's granting of summary judgment in favor of appellees. *Vossman.* Vossman appealed to the Supreme Court of Ohio. On March 26, 2014, the Supreme Court declined to accept jurisdiction of the appeal. *Vossman v. AirNet Sys., Inc.*, 03/26/2014 *Case Announcements*, 2014-Ohio-1182.

### B. Motion for Attorney Fees

{¶ 4} On November 7, 2012, appellees moved for an award of attorney fees against appellants in the trial court, alleging Vossman's claim was frivolous and Vossman's counsel vigorously continued to pursue the frivolous claim pursuant to R.C. 2323.51 and Civ.R. 11. In the motion for attorney fees, appellees stated the allegations made by Vossman in his complaint and relied on to overcome appellees' motion to dismiss were ultimately revealed to be untruthful when appellees' counsel deposed Vossman. Appellees argued the following allegations made by Vossman were unsubstantiated: (1) his co-worker's allegations regarding his flying behavior was false and based on his age, (2) the investigation into his behavior revealed his co-worker's allegations were unsubstantiated, (3) he was never directed to keep the investigation confidential, and (4) he was pretextually terminated

because of his age.   In support of its argument, appellees pointed to Vossman's own admissions in his deposition testimony that: (1) there was truth to his co-worker's allegations of his flying behavior, (2) he was directed to keep the investigation confidential, (3) he violated the confidentiality directive, and (4) he never believed his co-worker's allegations against him were age based.  Appellees argued Vossman's own admissions made the initial complaint lack evidentiary support and that his initial filing of the complaint and subsequent pursuit of the case through baseless arguments served only to harass and impose litigation costs on appellees.   Appellees argued Vossman's pursuit of the case through baseless and untrue allegations was in violation of Civ.R. 11 and constituted frivolous conduct in violation of R.C. 2323.51.   Therefore, appellees argued the case was frivolous as it could not be supported by a good-faith argument.

### 1. <u>Entitlement Determination</u>

{¶ 5}   On May 22, 2013, the magistrate conducted a hearing on the motion for attorney fees.  On June 3, 2014, the magistrate rendered a decision which granted appellees' motion for an award of attorney fees, in part.   The magistrate found, pursuant to R.C. 2323.51(A)(2)(a)(ii), appellees were entitled to recover reasonable attorney fees they incurred from April 26 through December 10, 2012 from appellants.   The magistrate reasoned: "It was absolutely clear, under existing age-discrimination law, that no reasonable attorney would have continued to prosecute [Vossman's] age-discrimination cause of action after April 26, 2012," the date appellees' counsel deposed Vossman.  (June 3, 2014 Mag. Decision at 14.)

{¶ 6}   On June 17, 2014, appellants filed objections to the magistrate's decision. Along with the objections, appellants submitted three affidavits, one from Vossman's trial counsel, Kelm, one from attorney Paul Tobias of Cincinnati, and one from attorney Frederick Gittes of Columbus.  All the affiants are employment law practitioners in Ohio. Appellees did not file a response.

{¶ 7}   On February 12, 2015, the trial court overruled appellants' objections to the magistrate's decision and found the magistrate properly determined the factual issues and applied the law correctly.  The court reasoned "there is no evidence, direct or indirect, that [Vossman's] age actually motivated [appellees] to terminate him or that his age played any role in his termination."  (Feb. 12, 2015 Decision at 8.)  The court found:

> The record indicates that by April 26, 2012, [Vossman] and his
> counsel  knew:  (1)  [appellees]  had  a  legitimate  reason  to

> investigate and suspend [Vossman], (2) [Vossman] was the only employee under suspension, under investigation, and issued a confidentiality directive, and (3) [appellees'] stated reason for terminating [Vossman's] employment was true. Nevertheless, with no proof that age was a factor behind his termination, [Vossman] and his counsel continued to prosecute this action.

(Feb. 12, 2015 Decision at 8-9.) Finally, the trial court held: "Upon review, this Court finds that [Vossman] and his counsel definitively knew by April 26, 2012, that there was no evidence of similarly situated employees being treated more favorably than [Vossman]. [Vossman] and his counsel also knew, by April 26, 2012 at latest, that there was no evidence, circumstantial or direct, indicating that age actually motivated [appellees'] decision to terminate [Vossman's] employment." (Feb. 12, 2015 Decision at 9.) The trial court adopted the magistrate's decision and held appellees were entitled to recover attorney fees from appellants, pursuant to R.C. 2323.51(A)(2)(a)(ii), which were incurred from April 26 through December 10, 2012. The court referred the matter back to the magistrate to determine the reasonable amount of attorney fees due to appellees.

### 2. Amount Determination

{¶ 8} On June 18, 2015, the magistrate conducted an evidentiary hearing to determine the amount of attorney fees owed to appellees. Appellees presented expert testimony as well as several exhibits which were admitted into evidence. (*See* Deft.'s Ex. A through H.) Appellants presented the testimony of Schaner and Vossman's own trial counsel, Kelm. Appellants presented several exhibits, only some of which were admitted into evidence. (*See* Pltf.'s Ex. 8 through 15.)[1] The magistrate found appellees incurred reasonable attorney fees in the amount of $45,714.53 from April 26 through December 10, 2012. The magistrate further found that AirNet is the real party in interest pursuant to the receiver (appointed by the United States District Court for the Northern District of Georgia, Atlanta Division, in case N.D.Ga. No. 1:14-cv-00178-WSD), having authorized AirNet's counsel to prosecute AirNet's claim for attorney fees and conclude this litigation. The court found the receiver confirmed appellees' counsel's authority in an e-mail communication.

---

[1] Plaintiff's Exhibits 1 through 7 were proffered but not admitted into evidence. Appellants, however, do not assign as error on appeal the trial court's determination to deny the motion to admit such exhibits into evidence. Therefore, they will not be considered as part of the court's record.

{¶ 9}   On August 3, 2015, appellants submitted their objections to the magistrate's decision on grounds that the decision: (1) granted attorney fees for illegal activity by appellees and their counsel, (2) granted attorney fees to AirNet now in receivership, in violation of a federal court ordered stay of proceedings, and (3) granted attorney fees to appellees who are not the real party in interest, since these claims are owned by a federal court receiver.  On August 31, 2015, appellees filed a memorandum contra appellants' objections to the magistrate's decision.

{¶ 10} On October 19, 2016, the trial court overruled appellants' objections and adopted the magistrate's decision in its entirety.  The trial court found appellants' objections to be not well-taken.  The court found appellees were entitled to recover attorney fees in the amount of $45,714.53, pursuant to R.C. 2323.51(A)(2)(a)(ii), from appellants.

### C. Final Appealable Order

{¶ 11} On November 7, 2016, the trial court filed a final judgment entry thereby making final and appealable the court's judgment entries filed February 12, 2015 and October 19, 2016.  Appellants filed a notice of appeal to this court.

## II.  Assignments of Error

{¶ 12} Appellants appeal and assign the following three assignments of error for our review:

> I. THERE WERE SUFFICIENT FACTS AVAILABLE TO PLAINTIFF AT TRIAL TO MAKE IT ERROR TO AWARD SANCTIONS FOR FRIVILOUS CONDUCT FOR PROCEEDING WITH THE CASE.
>
> II. DEFENDANTS AND COUNSEL ENGAGING IN ILLEGAL CONDUCT SHOULD NOT BE AWARDED SANCTIONS WHICH WOULD REWARD THEIR CONDUCT IN OBTAINING SUMMARY JUDGMENT THROUGH PERJURED TESTIMONY.
>
> III. OWNERSHIP OF A RECEIVERSHIP ASSET CANNOT BE PROVEN BY HEARSAY TESTIMONY AS TO WHAT THE RECEIVER TOLD THEM.

## III. Analysis

{¶ 13} Before discussing appellants' assignments of error, it is important to consider what was actually appealed and what can be considered on appeal.  In simplest terms, this case breaks down to three trial court determinations.  First, the trial court determined to

grant summary judgment on the complaint in favor of appellees. It made this determination in the October 19, 2012 decision granting appellees' motion for summary judgment. As noted previously, we affirmed this determination in *Vossman*, and the Supreme Court declined to review this determination. The appeal before us today will not address this first determination as it has already been reviewed and affirmed by this court. We will refer to this determination as the "merits determination."

{¶ 14} Second, the trial court determined appellees are entitled to recover attorney fees from appellants. The court made this determination in the February 12, 2015 decision overruling appellants' objections to the magistrate's June 3, 2014 decision. We will refer to this determination as the "entitlement determination."

{¶ 15} Third, the trial court determined the amount of attorney fees to which appellees were entitled from appellants. The court made this determination in the October 19, 2016 decision and entry adopting the magistrate's June 19, 2015 decision and overruling appellants' objections to the magistrate's decision. We will refer to this determination as the "amount determination."

{¶ 16} On November 7, 2016, the trial court entered a final judgment entry making the entitlement determination and the amount determination final and appealable.

{¶ 17} Appellants' notice of appeal states they are appealing from: (1) the court's final judgment entry dated November 7, 2016 (which encompasses the entitlement and amount determinations), and (2) the October 19, 2016 decision adopting the magistrate's June 19, 2015 decision and overruling appellants' objections to the magistrate's decision (the amount determination).

{¶ 18} Although appellants specifically state in the notice of appeal they are appealing the amount determination, the assignments of error address the entitlement determination only. Appellants do not challenge the amount determination. For that reason, we will focus our analysis on the trial court's second determination—that appellees are entitled to recover attorney fees from appellants.

## A. First Assignment of Error

{¶ 19} In their first assignment of error, appellants argue the trial court erred by awarding sanctions for frivolous conduct because there were sufficient facts for them to proceed with the case.

### 1. <u>Authority for Trial Court's Determination of Frivolous Conduct</u>

{¶ 20} The trial court awarded attorney fees, pursuant to R.C. 2323.51(B), having found that appellants engaged in frivolous conduct as defined in R.C. 2323.51(A)(2)(a)(ii).[2] R.C. 2323.51(A)(2)(a)(ii) defines frivolous conduct as:

> [Conduct which] is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

### 2. <u>Standard of Review</u>

{¶ 21} Here, we apply the standard of review as previously outlined in *Vossman*. In *Vossman*, we stated:

> Pursuant to R.C. 2323.51, a court may "award * * * court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with a civil action or appeal * * * to any party to the civil action or appeal who was adversely affected by frivolous conduct." R.C. 2323.51(B)(1). "Conduct" includes "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, * * * or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1)(a). "Frivolous conduct" is conduct that (1) obviously serves merely to harass or maliciously injure another party to the civil action; (2) is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law; or (3) consists of allegations or other factual contentions that have no evidentiary support or are not likely to have evidentiary support after a reasonable opportunity for further investigation. R.C. 2323.51(A)(2)(a).

---

[2] Before the trial court, appellees also argued that appellants' conduct was frivolous because: (1) it served merely to harass or maliciously injure appellees or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation, and (2) it consisted of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. *See* R.C. 2323.51(A)(2)(a)(i) and (iii). The trial court did not make any determination, express or implicit, whether appellants' conduct served merely to harass or maliciously injure appellees or was for another improper purpose. We decline to make such a determination in the first instance. The trial court did, however, make an implicit determination that appellants' allegations and factual contentions had no evidentiary support, although the court did not refer to the specific statutory authority in making such findings. Furthermore, appellants' assignment of error specifically argues there existed sufficient facts for them to proceed. Accordingly, we will discuss these determinations as relevant to our analysis of the trial court's finding pursuant to R.C. 2323.51(A)(2)(a)(ii).

"No single standard of review applies in R.C. 2323.51 cases; the inquiry is one of mixed questions of law and fact." [*Judd v. Meszaros*, 10th Dist. No. 10AP-1189, 2011-Ohio-4983,] at ¶ 18, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51 (10th Dist.1996). Initially, the court must conduct a factual inquiry to determine whether the party's conduct was frivolous. *Judd* at ¶ 18. "Review of a trial court's factual determinations involves some degree of deference, and we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings." *Id.*, citing *Wiltberger* at 52.

" 'A determination that conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis.' " *Stuller v. Price*, 10th Dist. No. 03AP-30, 2003-Ohio-6826, ¶ 14, quoting *Sain v. Roo*, 10th Dist. No. 01AP-360 (Oct. 23, 2001). *See also Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, ¶ 20-21, (1st Dist.); *Judd* at ¶ 19. We review pure questions of law under a de novo standard. *Id.* at ¶ 19.

*Id.* at ¶ 40-42.

### 3. <u>Standard for Trial Court to Award Attorney Fees</u>

{¶ 22} Appellants cite *McCallister v. Frost*, 10th Dist. No. 07AP-884, 2008-Ohio-2457, ¶ 31, to support the argument that "only" where there is an absolute dearth of any evidence are sanctions appropriate. (Appellants' Brief at 15.) We disagree that this court has set such a high standard for the award of sanctions. Appellants mischaracterize *McCallister*. *McCallister* does not use the term "only" and does not require an absolute dearth of evidence before sanctions are awarded. Rather, the *McCallister* court, regarding the specific circumstances before it, commented that there was an absolute dearth of evidence to support the plaintiff's claim.

{¶ 23} We agree with appellants, however, that even where there is not enough evidence to survive a motion for summary judgment, this does not necessarily translate into a frivolous claim. *See Homewood Homes, Inc. v. Helwig*, 10th Dist. No. 08AP-406, 2009-Ohio-1699, ¶ 33. We also agree that the inquiry into whether a claim is frivolous may be informed by an examination of a lawyer's obligations pursuant to the Ohio Rules of Professional Conduct. Appellants point us in particular to Rule 3.1 and the official comment thereto, which read in relevant part:

## RULE 3.1: MERITORIOUS CLAIMS AND CONTENTIONS

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue in a proceeding, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

### Comment

[1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification, or reversal of existing law.

{¶ 24} Finally, both parties agree that in order for a trial court to award attorney fees, pursuant to R.C. 2323.51(A)(2)(a)(ii), the court must find that "no reasonable lawyer would have brought the action in light of the existing law." We have previously stated that:

R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed for frivolous conduct. *Stevenson v. Bernard*, 11th Dist. No. 2006-L-096, 2007-Ohio-3192, ¶ 41. Therefore, a finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Wauseon v. Plassman*, 6th Dist. No. F-96-

003 (Nov. 22, 1996). Accordingly, R.C. 2323.51 is broader in scope than Civ.R. 11. *State Farm Ins. Cos. v. Peda*, 11th Dist. No. 2004-L-082, 2005-Ohio-3405, ¶ 25.

*Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, ¶ 6 (10th Dist.).

### 4. Law of Employment Discrimination

{¶ 25} Taking all this into consideration, we now examine the existing law of employment discrimination. In *Vossman*, we stated:

> "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent" and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). Absent direct evidence of age discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), as adopted by Supreme Court of Ohio in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), and modified in *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723.

*Id.* at ¶ 15.

### a. *Law of Establishing a Prima Facie Case*

{¶ 26} Appellants stated they intended to prove discriminatory intent on the part of appellees indirectly, using circumstantial evidence. The Supreme Court of Ohio outlined the test for proving such intent indirectly in *Coryell v. Bank One Trust Co., N.A.,* 101 Ohio St.3d 175, 2004-Ohio-723:

> [A]bsent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age.[3]

*Id.* at ¶ 20.

---

[3] In *Coryell*, the Supreme Court held that "[a]ccordingly, we hold that a plaintiff may plead a prima facie case of age discrimination by pleading 'a short and plain statement of the claim showing that the party is entitled to relief.' " *Id.* at ¶ 25, citing Civ.R. 8(A)(1).

{¶ 27} Alternatively, a plaintiff can establish the fourth prong by demonstrating that a " 'comparable non-protected person was treated better.' " *Vossman* at ¶ 16, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992); *Clark v. Dublin*, 10th Dist. No. 01AP-458, 2002-Ohio-1440. Establishing a prima facie case " 'creates a presumption that the employer unlawfully discriminated against the employee.' " *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 11, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

{¶ 28} The trial court determined Vossman established a prima facie case, and we affirmed that determination in *Vossman*.

### b. *Law of Articulating a Legitimate Non-discriminatory Reason for Terminating Vossman's Employment*

{¶ 29} If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for discharging the employee. *Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393, ¶ 61, citing *Burdine* at 253. "The employer meets its burden of production by submitting admissible evidence that ' "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action" ' * * * that the prima facie case establishes." (Emphasis sic.) *Vossman* at ¶ 17, quoting *Williams* at ¶ 12, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

{¶ 30} Appellants did not contest that appellees established a legitimate, non-discriminatory reason for Vossman's termination: "because [Vossman] violated a known directive [that Vossman cease communicating with other AirNet employees regarding the complaint by continuing to communicate with other co-employees regarding the continuing investigation]." *Id.* at ¶ 24.

### c. *Law of Pretext*

{¶ 31} If the employer meets its burden of production by articulating a legitimate non-discriminatory reason for termination, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate, non-discriminatory reason was merely a pretext for unlawful discrimination. *Barker v. Scoville, Inc.*, 6 Ohio St.3d 146, 148 (1983). " 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Ohio Univ. v. Ohio Civ. Rights Comm.*, 175 Ohio App.3d 414, 2008-Ohio-1034, ¶ 67 (4th Dist.), quoting

*Burdine* at 253. " '[A] reason cannot be proved to be "a pretext *for discrimination*" unless' " plaintiff demonstrates " '*both* that the reason was false, *and* that discrimination was the real reason.' " (Emphasis sic.) *Williams* at ¶ 14, quoting *St. Mary's Honor* at 515.

{¶ 32} The trial court found that "[ Vossman] and his counsel * * * knew, by April 26, 2012 at [the] latest, that there was no evidence, circumstantial or direct, indicating that age actually motivated [appellees'] decision to terminate [Vossman's] employment." (Feb. 12, 2015 Decision at 9.) In particular, the court found that after the April 26, 2012 deposition, Vossman and his counsel knew "[appellees'] stated reason for terminating [Vossman's] employment was true [and] no proof that age was a factor behind his termination." (Feb. 12, 2015 Decision at 9.) The trial court also found that Vossman and his counsel "definitively knew by April 26, 2012, that there was no evidence of similarly situated employees being treated more favorably than [Vossman]." (Feb. 12, 2015 Decision at 9.)

{¶ 33} In support of the trial court's finding, appellees point this court to Vossman's own testimony and admission that he was instructed to cease communications with other AirNet employees regarding the investigation and that he violated this instruction. Appellees argue, therefore, that given Vossman's own testimony, Vossman and his counsel were aware that they could not meet the first criteria for proving pretext—that the reason given by the employer was false. We will consider the same in light of the existing law of pretext and whether a reasonable lawyer would have continued to pursue the action.

{¶ 34} Appellants point to the general law outlined in *St. Mary's Honor*, and *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), as case law supporting the continued pursuit of this case after Vossman's deposition. In *St. Mary's Honor*, the United States Supreme Court clarified the court's role at the pretext stage:

> [Once t]he defendant's "production" (whatever its persuasive effect) [has] been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved "that the defendant intentionally discriminated against [him]" because of his [age], *Burdine*, 450 U.S. 248, 253. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and * * * upon such rejection, "no additional proof of discrimination is *required*," * * * (emphasis added). But the Court of Appeals' holding that rejection of the defendant's proffered reasons

*compels* judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the "ultimate burden of persuasion."

\* \* \*

But a reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

(Emphasis sic.) *Id.* at 511, 515.

{¶ 35} In *Manzer*, the federal court held:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." [*Baxter Healthcare v. Anderson*, 13 F.3d 1120, 1123-24 (7th Cir.1994).] The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employee's [sic] proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *Hicks*, 113 S.Ct. at 2749. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than

> that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

(Emphasis sic.) *Id.* at 1084.

{¶ 36} This court cited this holding from *Manzer* in *Vossman* and discussed therein whether, pursuant to the third prong of *Manzer*, the trial court erred in granting summary judgment to appellees.[4] Now, however, appellants assert they were justified in continuing to pursue the claim of age discrimination following Vossman's deposition under the second prong of *Manzer*—that the proffered reasons did not *actually* motivate his discharge. As noted above, under the second prong of *Manzer*, a plaintiff may admit the facts underlying an employer's proffered explanation and concede that such conduct could motivate

---

[4] In *Vossman*, at ¶ 28, we observed:

> Plaintiff contends defendants' reason was insufficient to motivate his discharge under the third prong of *Manzer* since similarly-situated employees received more favorable treatment despite engaging in the same conduct. To establish that defendants' legitimate, nondiscriminatory reason was insufficient, plaintiff must present "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* at 1084.

We ultimately held, at ¶ 30:

> Plaintiff specifically claims that AirNet did not equally enforce a policy that investigations were to be confidential because other employees also discussed the investigation as it was ongoing, but were not terminated. However, AirNet did not claim to have a policy that investigations were to be confidential. Rather, Schaner and Miller instructed plaintiff to cease discussing the complaint because, by actively recruiting other employees to lobby on his behalf to management, he was disrupting the ongoing investigation into the truth of Blackburn's complaint. Although plaintiff notes that other pilots also discussed the investigation with one another, he does not contend that any of the alleged comparables were the subject of an ongoing investigation. Further, plaintiff stated he was unaware of any pilot who was asked to maintain confidentiality and then breached that agreement.

discharge, yet still pursue the case by attacking the credibility of the employer's explanation. Appellants point to several pieces of evidence to support this claim.[5]

{¶ 37} First, appellants claim there was evidence that appellees changed their explanation for terminating Vossman. Specifically, appellants point to: (1) appellees' initial statements that Vossman was terminated pursuant to an official policy regarding investigations, although there was no evidence of such policy and appellees later claimed that Vossman was terminated for violating a verbal directive, and (2) appellees' statement that Vossman was twice told to refrain from speaking about the investigation, although the evidence reflected only one instance in which Vossman was verbally told to refrain from discussions.

{¶ 38} Appellants provided several evidentiary materials attached to their objections to the magistrate's entitlement decision to support these contentions. In response to an interrogatory seeking "each and every reason Plaintiff's employment with AirNet was terminated, the factual basis for the reason(s), and identify all persons who made that decision on behalf of AirNet," appellees responded:

> Subject to and without waiving any objections, [appellees] state that as a result of complaints relating to his unsafe flying practices, [Vossman] was placed on paid leave while [AirNet] investigated the allegations against him. These allegations, if proven true through AirNet's investigation, warranted disciplinary action up to and including discharge. *Pursuant to Company policy*, AirNet requested [Vossman's] cooperation with the investigation and specifically asked that [Vossman] keep the fact of the investigation confidential *on no less than two occasions*. Nonetheless, [Vossman] repeatedly breached this confidentiality by openly discussing the ongoing investigation. [Vossman's] efforts made it impossible for AirNet to properly investigate the complaints made against [Vossman]. In addition, [Vossman's] efforts caused other AirNet employees to suffer retaliation. As a result, [Vossman]

---

[5] We note that appellants raise several additional arguments, which we do not discuss in detail in the body of this decision, including: (1) other senior pilots were no longer employed by AirNet within months following Vossman's termination, AirNet previously tried to get Vossman to retire, and that AirNet had a history of seeking to terminate older employees, (2) Schaner notified other employees by e-mail, instructing them to refrain from discussing the matter, and some of those employees, who were substantially younger than Vossman, violated this directive but were not terminated or otherwise disciplined, (3) appellees made several untrue representations to the trial court, including that "Bill Ronk did not know about the investigation of Vossman until after Miller told Vossman not to discuss it, when an e-mail produced in discovery showed otherwise," (4) AirNet changed its story regarding who among its senior staff was involved in the decision to terminate Vossman, and (5) AirNet moved its base to St. Louis in order to terminate two older pilots. (*See* Appellants' Brief at 19-20, 24, and 29 and Appellants' Reply Brief at 7-8.) As it is not necessary for us to analyze these contentions in order to reach our determination, we decline to address them.

> was terminated. Quinn Hamon, Kim Miller and Thomas Schaner were involved in the decision to terminate [Vossman]. Amy Blackburn, Mike Troy, and Keith McGeorge presented complaints to AirNet regarding [Vossman] failure to comply with AirNet's policies and procedures. Further answering, see documents produced herewith.

(Emphasis added.) (Appellants' Objs. to Mag.'s Entitlement Determination, Ex. E at 4-5.) Appellants also pointed to a personnel action form purportedly authored by Schaner, which stated:

> During the course of the investigation, Dan spoke to individuals not directly associated with the investigating team. His actions compromised the investigation, may have subjected other parties associated with the investigation to attempts of retribution and his sharing of information was *indirect* [sic] *violation of company policy. The policy states* that such violations are grounds for termination of employment. Consistent with the *stated policy* Dan's employment with AirNet was terminated.

(Emphasis added.) (Appellants' Objs. to Mag.'s Entitlement Determination, Ex. D.)

{¶ 39} In their motion for summary judgment, appellees made no mention of a policy or multiple directives but, instead, stated that "[Vossman] admits that AirNet directed him to maintain the confidentiality of the investigation" and that "[Vossman] admits that he knowingly violated *the directive.*" (Emphasis added.) (Mot. for Sum. Jgmt. at 12-13.) Schaner, in his affidavit filed in support of the motion for summary judgment, made no mention of the discussion being in violation of company policy or that Vossman violated more than one directive to maintain confidentiality:

> Unfortunately, [Vossman] did not permit me to continue the investigation. [Vossman] e-mailed, phoned and texted various AirNet pilots and solicited generic statements on his behalf. These solicitations were particularly harmful to the investigation because [Vossman] advised the potential witnesses of the complaint and underlying issues.

> At my request, Ms. Miller contacted [Vossman] on Friday, March 12, 2011, *to instruct him to discontinue all discussions* with AirNet employees regarding the investigation, the allegations made against him, or his response to the allegations.

> Despite *this instruction*, I learned from two AirNet pilots, Keith McGeorge and Bill Ronk, that [Vossman] contacted them to discuss the ongoing investigation after [Vossman] spoke with Ms. Miller on March 12, 2011.

> As a result of Mr. Vossman's complete disregard of *a Company directive*, which hindered the Company's ability to conduct an investigation, \* \* \* I decided to terminate [Vossman's] employment.

(Emphasis added.) (Mot. for Sum. Jgmt. Ex. A at 4-5.)

{¶ 40} In support of their argument that this evidence demonstrated Vossman's claim was warranted under existing law, appellants cited to several cases arguing the shifting explanations by appellees raised an inference of mendacity. (*See* Appellants' Brief at 22, quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996); *Edwards v. United States Postal Serv.*, 909 F.2d 320, 324 (8th Cir.1990); and *Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132 (2d Cir.1987) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").

{¶ 41} Second, appellants point to evidence they contend calls into question whether appellees' stated reason for terminating Vossman was the actual reason for his termination. Appellants attached to their objections to the magistrate's entitlement decision a copy of an e-mail exchange between Schaner and Miller. With respect to an e-mail he received from an AirNet employee in support of Vossman, Schaner wrote to Miller: "In addition to this little beauty I have also taken a call from [two other AirNet employees] on this topic. This is lining up as a 'damned if we do, damned if we don't' scenario for us quickly." (Appellants' Objs. to Mag.'s Entitlement Determination, Ex. G.) Miller replied: "Before I left I asked Quinn to make sure that he knows that he cannot retaliate against any pilot or talk to anyone about this. Did he tell [D]an that? I'm assuming these people know because Dan told them? Totally inappropriate of Dan and the others commenting." (Appellants' Objs to Mag.'s Entitlement Determination, Ex. G.)

{¶ 42} Although appellants, in the course of their representation, did not present these evidentiary materials in response to the motion for summary judgment, they did impliedly raise the issue of whether the stated reason actually motivated the challenged employment action. In the memorandum in opposition to the motion for summary judgment, Vossman made the following argument:

> In this case, a co-worker complained about [Vossman's] safety on two flights and accused him of violating FAA regulations and company policies. [*Vossman*] *knew that he did not do what he was being accused of doing.* [Vossman] was placed on leave and told an investigation would be conducted. *Initially,* [*Vossman*] *was not told the investigation was confidential*, so

he spoke to other long-term employees who had flown with him many times over the years about the allegations. When [appellees] began receiving letters of support from [*Vossman's*] co-workers, [appellees] told [Vossman] not to communicate with anyone during the investigation. *Knowing the allegations could not be proven with objective evidence, [appellees] then terminated [Vossman's] employment for speaking to his co-workers during the investigation.*

(Emphasis added.) (Vossman's Memo. in Opp. to Mot. for Sum. Jgmt. at 12.)

{¶ 43} Appellants further support their argument with the affidavits of three experienced employment lawyers, Vossman's lawyer Kelm, Attorney Tobias, and Attorney Gittes, who averred that no competent employment lawyer would have dismissed this case after Vossman's deposition.  Attorney Tobias averred that:

Based on [his 35 years of] experience [practicing employee-side employment law], frequently there is evidence and testimony concerning discrimination from sources other than the plaintiff victim of discrimination, both direct and circumstantial evidence and evidence of pretext, which if believed warrants a finding of discrimination.

* * *

In this case where the plaintiff established a prima facie case and presented substantial evidence of pretext in the reason given for discharge, no competent employment attorney would abandon his client and dismiss the case after the plaintiff testified that he knew of no direct evidence of age discrimination and that the employer was justified in investigating allegations of unsafe flying, particularly when substantial discovery was yet to be conducted.

(Tobias Aff. at ¶ 6, 9.)

{¶ 44} Attorney Gittes averred:

With some exceptions, in employment discrimination cases, it is unusual for a plaintiff's deposition testimony to provide outcome-determinative discovery information. Most employee plaintiffs do not have nearly as much information (either documents or admissible testimony) about the employer's motivation for the challenged employment decision.  The discovery process, in employment litigation, is typically an opportunity for the plaintiff employee to obtain documents and testimony from the defendant employer's managers and employees (such as internal emails and memos, personnel file information about the plaintiff and comparator employees,

information about past disciplinary actions, investigations, or instances of potential discrimination, and the decision-makers' explanations for their actions, along with their reaction to contradictory evidence). Whether a case develops to the point that the plaintiff's case can survive summary judgment and proceed to a jury trial depends largely on what records the employer produces, whether the employer's decision-making was documented in potentially damaging emails and memos, whether other employees were treated equally under similar circumstances, and whether the employer "gets it story straight" and avoids inconsistencies in key managers' testimony. The plaintiff employee's testimony generally has little impact on any of these areas.

(Gittes Aff. at ¶ 10.) Gittes further pointed the court to the second factor of *Manzer* and reiterated much of the evidence appellants pointed to as well as evidence suggesting that appellees attempted to suppress positive information about Vossman while collecting negative information. Finally, in reference to another experienced employment law attorney, appellants point to the fact that David Campbell, AirNet's counsel, conceded that appellants did not take too many depositions, but he thought they should have taken two more, or six in total.

{¶ 45} Appellees did not address *Manzer* in their brief before this court; rather, as noted above, they relied on Vossman's own testimony in support of its argument that the trial court should be affirmed. Nor did the magistrate or the trial court[6] address the law of *Manzer* in its entitlement determination.

{¶ 46} Although appellants, prior to summary judgment, may not have artfully or fully pursued Vossman's claim in light of existing law, based on the foregoing evidence in the record and under the law of *St. Mary's Honor* and *Manzer*, we cannot find that "no reasonable lawyer would have brought the action in light of the existing law." *Stafford* at ¶ 6. Therefore, we find the trial court erred in awarding sanctions based on a finding that appellants' claims were not warranted under existing law, could not have been supported by a good-faith argument for an extension, modification, or reversal of existing law, or could

---

[6] Our review of the record does not reveal that appellants raised *Manzer* in briefing or objections filed before the trial court. However, Attorney Gittes discussed *Manzer*, in particular the second prong of *Manzer*, in his affidavit which was submitted to the trial court as an attachment to appellants' objections to the magistrate's decision. In its entitlement determination, the trial court acknowledged the submission of affidavits of Attorneys Gittes and Tobias. Accordingly, we determine it is appropriate to address the same.

not have been supported by a good-faith argument for the establishment of new law. Accordingly, we sustain appellants' first assignment of error.

### B. Second and Third Assignments of Error

{¶ 47} Having sustained appellants' first assignment of error, appellants' second and third assignments of error are rendered moot.

## IV. Conclusions of Law

{¶ 48} Having sustained appellants' first assignment of error and rendered moot appellants' second and third assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas. We remand for the trial court to vacate the judgment entry of November 7, 2016, as well as the decisions of February 12, 2015 and October 19, 2016, finding appellants' engaged in frivolous conduct and awarding attorney fees to appellees for the same.

*Judgment reversed and*
*cause remanded with instructions.*

BROWN, P.J., concurs.
HORTON, J., dissents.

HORTON, J., dissenting.

{¶ 49} I respectfully dissent with the majority's finding any error in the trial court's adoption of the magistrate's June 3, 2014 decision, which rejects appellants' objections. In short, Vossman's own admission elicited from his deposition caused irreparable injury to his case. Furthermore, in light of these facts, I do not believe that appellees or the trial court and magistrate had any obligation to address the *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir.1994), decision. The magistrate authored a well-reasoned decision and addressed all necessary standards of law.

_____